# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **KENNETH LACEY,** )<br>)<br>Plaintiff, )<br>v. )<br>)<br>**DENIS R. MCDONOUGH,** )<br>**SECRETARY OF VETERANS AFFIARS,** )<br>)<br>Defendant. )<br>) | No. 2:21-cv-02801-JTF-cgc |

## ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION TO AMEND, AND FINDING AS MOOT DEFENDANT'S FIRST MOTION TO DISMISS.

Before the Court are three Motions, one filed by the Plaintiff, Kenneth Lacey, and two others by the Defendant, the Secretary of the Department of Veterans Affairs ("the Secretary"). First is the Secretary's Motion to Dismiss Lacey's first Complaint, filed on March 3, 2022. (ECF No. 10.) However, given that Lacey's since filed Amended Complaint has superseded the first Complaint and the Secretary has since filed an updated Motion to Dismiss, the Court **DENIES** that motion as moot. Second is the Secretary's Second Motion to Dismiss Lacey's Amended Complaint for Failure to State a Claim, filed on March 29, 2022. (ECF No. 14.) Third is Lacey's Motion to Amend/Correct Complaint, filed on March 31, 2022. (ECF No. 15.) Lacey did not respond substantively to the second Motion to Dismiss, instead filing a response contending that his Motion to Amend made the Motion to Dismiss moot. (ECF No. 16.) The Secretary did not respond to the Motion to Amend. For the below reasons, the Motion to Amend is **DENIED**, and the Motion to Dismiss is **GRANTED.**

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken primarily from Lacey's First Amended Complaint. Lacey seeks to replace this complaint, through his Motion to Amend, with a Second Amended Complaint. However, the two complaints are largely identical, and material contained solely in the Second Amended Complaint will be noted.

This case involves claims of race discrimination in employment and breach of contract. At all relevant times, Lacey, a Black man, was employed as a Housekeeper by the Department of Veterans Affairs at the VA Medical Center in Memphis, Tennessee. (ECF No. 9, 3.) As an employee, Lacey was a member of the National Association of Government Employees ("the Union"), a federal-sector labor union organized under the Federal Service Labor-Management Relations Statute ("FSLMRS"). On August 7, 2018, the Department "posted a position for a Safety and Occupational Health Specialist on USAJOBS[.]" (*Id.*) This position was referred to as Vacancy Announcement RZ-18-LP-10279638-T5, and Lacey internally refers to the position as "Announcement A." (*Id.*) On September 7, 2018, the Department posted a substantially similar, separate job opening, referred to as Vacancy Announcement RZ-18-AFA-1034287-T5-BU, which Lacey refers to as "Announcement B." (*Id.*) Lacey states that Announcement B was reserved exclusively for internal hires. (*Id.* at 5.) Lacey applied for Announcement A on August 13, 2018, and for Announcement B on September 8, 2018. (*Id.* at 4.) Both times Lacey applied, he was told by Sandra Dickey (the Occupational Health and Safety Manager at the Medical Center and the hiring official for both positions) that she did not receive his "referral" from Human Resources. (ECF No. 9, 4.) Lacey checked with Human Resources to confirm that Dickey, a white woman, did in fact receive the referral, and HR sent the referral numerous times. (*Id.*) Despite this, Dickey maintained that she did not receive a referral all the way through September 24, 2018. (*Id.* at 5.)

Ultimately, Lacey was not selected for either position. (*Id.* at 4.) Instead, two outside hires, Michael Penrod and David Maddock, were selected for Announcement A and Announcement B respectively. (*Id.*) Both Penrod and Maddock are white men. (ECF No. 9, 5.) Lacey alleges he was more qualified for both positions than Penrod and Maddock, and that their hirings were motivated by race discrimination and violated multiple contractual rights and procedures secured by the contract between the Union and the Department.

Lacey states that Penrod was selected on August 21 and Maddock on August 30. (*Id.*) Despite these early selection dates, Lacey notes that his resume was not "scored," an evaluative process used in hiring, until September 5. (*Id.*) When his resume finally was scored, it was done improperly. Lacey's years of experience and OSHA Safety Certification should have earned him a score of 25 points, but he only received a score of 15 points. (*Id.* at 2, 5.) Lacey also states that the Department was required to keep the Vacancy Announcements open for at least 15 days, but did not do so with Announcement A. (*Id.* at 6.) Beyond the quick selection, Lacey notes that his experience and qualifications entitled him to an interview, which he did not receive, and that he deserved "first and full consideration" given his internal hire status. (ECF No. 9, 6.) Further, the Department was contractually obligated to inform him of the reasons he was not selected, but when Lacey asked, Dickey was unable to provide him with any justification for his non-selection. (*Id.* at 7.)

In his proposed Second Amended Complaint, Lacey states that he then filed a grievance against the Department and "went through two separate mediations with Defendant in an attempt to resolve this matter." (ECF No. 15-2, 8.) He alleges that a union representative, Laffeatte Baptist, was present at both mediations, and that the Defendant verbally consented to allowing him to file the present lawsuit, thus waiving any immunity. As a result, Lacey "exhausted all administrative

3

remedies in this matter with Defendant, as acknowledged by Defendant." (*Id.*) Despite this, Lacey states that the Department "never provided a response to [his] grievance in writing, and has not kept detailed records of all that has occurred in this matter." (*Id.*) The facts in this paragraph were contained only in Lacey's proposed Second Amended Complaint.

Lacey then filed a formal complaint with the Equal Employment Opportunity Commission, which issued a Final Order in his case on September 24, 2021. (ECF No. 9-1.) Lacey then filed the present case on December 22, 2021, alleging claims of race discrimination and breach of contract throughout the hiring process detailed above. (ECF No. 1) The Secretary filed an initial Motion to Dismiss on March 3, 2022, (ECF No. 10), but Lacey filed an Amended Complaint as of right that very day, (ECF No. 9.)[1] The Secretary then filed a Motion to Dismiss the Amended Complaint on March 29, 2022, (ECF No. 14), and Lacey filed a Motion to Amend/Correct Complaint, seeking to file the Second Amended Complaint, two days later on March 31, 2022, (ECF No. 15.) Lacey also filed a separate response to the second Motion to Dismiss on the same day, which argued that the motion was moot in light of his Motion to Amend. (ECF No. 16.)

## II.   LEGAL STANDARD

1. *Motion to Dismiss*

The Secretary seeks dismissal of some of Lacey's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the

---

[1] All of the Secretary's Motions to Dismiss have been partial and do not seek to dismiss Lacey's Title VII claims.

light most favorable to the plaintiff and accept all allegations as true."). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although the complaint need not contain detailed facts, its factual assertions must be substantial enough to raise a right to relief above a speculative level. *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). However, "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense. *Iqbal*, 556 U.S. at 679. Defendants bear the burden of "proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008).

While the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted).

2. *Motion to Amend*

In relevant part, Federal Rule of Civil Procedure 15 allows a party to amend a pleading once as a matter of course within 21 days after service. Fed. R. Civ. P. 15(a)(1)(A). After this first

amendment as of right, a party must receive either the opposing party's written consent or leave of court to amend the pleading again. *Id.* 15(a)(2). Courts should grant leave to amend freely "when justice so requires," and the Sixth Circuit has previously listed factors to guide this determination:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).

### III.   LEGAL ANALYSIS

1. *Motion to Dismiss*

The Defendant argues that three of Lacey's claims should be dismissed. First, they state that Lacey's claims asserted under 42 U.S.C. § 1983 may not proceed, as Title VII is the exclusive avenue for race discrimination in employment claims asserted against the federal government. (ECF No. 14, 6.) Second, they argue that Lacey failed to state a breach of contract claim because this Court lacks subject matter jurisdiction to hear that claim due to Lacey's failure to exhaust his administrative remedies. (*Id.*) Third, they assert that Lacey's claim for punitive damages under Title VII should be dismissed, as punitive damages are not recoverable against the federal government. (*Id.* at 10.) Lacey makes only one argument in his response: he believes that his Motion to Amend entirely mooted the Motion to Dismiss. (ECF No. 16.)

   a. *Mootness*

As a preliminary matter, the Court must address Lacey's only argument made in response to the Motion to Dismiss. Lacey argues that because he filed his Motion to Amend his First Amended Complaint, the Motion to Dismiss is now considered moot. (ECF No. 16.) Lacey cites

no law in support of this position. The Court surmises that Lacey is referring to the general rule that "an amended pleading supersedes the original" and that because of this, "the filing of an amended complaint generally moots a pending motion to dismiss." *Smith v. Cty. of Wyoming*, No. 1:13-cv-915, 2014 WL 1796767, at *1 (S.D. Ohio May 6, 2014) (citing *Greater Cincinnati Coalition for the Homeless v. Cty. of Cincinnati*, No. 1:08-cv-603, 2009 WL 3029661, at *3 (S.D. Ohio Sept. 16, 2009); *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002)). However, in the rare case "where the amended complaint is 'substantially identical to the original complaint,'" the amended complaint may be insufficient to moot a motion to dismiss. *Piper v. Dollar General Corp.*, No. 3:11-554, 2011 WL 3608635, at *2 (M.D. Tenn. Aug. 16, 2011) (quoting *Greater Cincinnati Coalition for the Homeless*, 2009 WL 3029661, at *4).

The Court does not agree that the Motion to Dismiss is now moot. Importantly, Lacey's Second Amended Complaint has not yet been filed. Lacey filed a *Motion* to Amend, not an Amended Complaint. Nothing has been superseded, and the First Amended Complaint remains the operative document. Lacey was forced to file the Motion to Amend because he has already amended his complaint once as a matter of right, in response to an earlier Motion to Dismiss filed by the Secretary. (ECF No. 9.) Were the Court to grant the Motion to Amend, it is possible that the Motion to Dismiss would then become moot. However, for reasons discussed more below, the Court believes that Lacey's Motion to Amend should be denied due to futility. Accordingly, the Court will consider the Motion to Dismiss on its merits.

    b. <u>42 U.S.C. § 1983 Claims</u>

Lacey asserts that his complaint is brought "pursuant to Civil Rights Violations of Title VII Discrimination, and 1983." (ECF No. 9, 1.) The Secretary argues that Lacey's claims under § 1983 must be dismissed, as "it is well established that § 717 of Title VII, 42 U.S.C. § 2000e-16, is

the exclusive and preemptive remedy for race discrimination in federal sector employment preempting all claims for relief sought to be prosecuted on other statutory or even constitutional bases." (ECF No. 14, 6.)

The Court agrees. "Title VII of the Civil Rights Act of 1964 [] provides the 'exclusive judicial remedy for claims of discrimination in federal employment.'" *Walker v. Henderson*, 4 F. App'x 248, 249 (6th Cir. 2001) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)) (internal citations omitted). It is undisputed that Lacey is bringing a claim of discrimination in federal employment. Any claims he asserts under § 1983 are **DISMISSED**.

c. *Breach of Contract Claims*

The Secretary next seeks to dismiss Lacey's breach of contract claims, asserted under 28 U.S.C. §§ 1331 and 1343. (ECF No. 14, 6.) Specifically, the Secretary argues that Lacey has not identified an applicable waiver of sovereign immunity for his breach of contract claims, and that certain administrative procedures, which remain unexhausted, preclude Lacey's claims.

Lacey has sued the Secretary of the Department of Veterans Affairs in his official capacity, meaning that he must "identify a waiver of sovereign immunity in order to proceed." *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). Lacey asserts two bases for jurisdiction: 28 U.S.C. §§ 1331 and 1343. Section 1331, as the Secretary points out, is merely the general federal jurisdiction statute, which does not waive sovereign immunity. *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) ("the federal question jurisdictional statute is not a general waiver of sovereign immunity"). Section 1343 grants federal courts original jurisdiction over civil actions that aim to enforce civil rights or recover from violations of them, but the "Supreme Court has rejected the position that [§ 1343(a)(4)] encompasses all federal statutory suits[.]" *Walker v. JP Morgan Chase Bank, N.A.*, No. 13-2100-JDT-dkv, 2013 WL 2151713, at *9 (W.D. Tenn. May 16,

8

2013) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979) (internal quotation marks omitted)). Lacey's breach of contract claims, which involve claimed violations of the collective bargaining agreement between his Union and the Department, do not touch on civil rights.[2]

The case of *Toledo v. Jackson*, cited by the Secretary, is particularly instructive. 485 F.3d 836 (6th Cir. 2007). In *Toledo*, the Sixth Circuit dealt with breach of contract claims brought by two Department of Housing and Urban Development ("HUD") employees against HUD for claimed violations "of the collective bargaining agreement between HUD and the union." *Id.* at 838-39. The Sixth Circuit ultimately affirmed the dismissal of these claims because the plaintiffs "ha[d] not established that the district court had jurisdiction over their claim." *Id.* at 838 (citing *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980)). In doing so, the court looked beyond the statutes cited by the plaintiffs to examine the agreement in question to see if its procedures granted federal courts jurisdiction over claims arising under it.[3] The Court will do the same here.

Lacey states that the Defendant "has a binding contract with Plaintiff as to what the policies and procedures are regarding Vacancy Announcements," among other things, while citing to an exhibit he attached to the Complaint.[4] (ECF No. 9, 6.) That exhibit consists of numerous pages of the "DVA/NAGE Master Agreement," (hereinafter "the CBA") all containing procedures that

---

[2] Lacey asserts separate claims that do involve violations of his civil rights, under Title VII, but those claims are not challenged in the present motion.

[3] In doing so, the Sixth Circuit noted that "it is by no means clear that a collective bargaining agreement by itself could impact the immunity of a federal agency" due to the "general rule" that "the agency may be sued only if *Congress* has consented to the action." *Toledo*, 485 F.3d at 839 (quoting Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3655, at 348 (1998)).

[4] As noted above, a court may consider certain materials outside the pleadings without converting the motion to one for summary judgment, including "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 746 (S.D. Ohio 2020) (quoting *Rondigo, LLC*, 641 F.3d at 681).

9

Lacey believes the Department violated during this hiring process. (ECF No. 9-2.) The CBA was organized under "Chapter 71 of Title 5 of the U.S. Code," (ECF No. 14-1, 6), a statute known as the Federal Service Labor-Management Relations Statute ("FSLMRS"). *See Federal Labor Relations Auth. v. Mich. Army Nat. Guard*, 878 F.3d 171, 174 (6th Cir. 2017). FSLMRS governs collective bargaining agreements between the federal government and its employees; as part of this coverage, it states that "any collective bargaining agreement shall provide procedures for the settlement of grievances" and that "[e]xcept as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). The CBA reflects this, and states that its "negotiated grievance procedure shall be the sole procedure available to the Union, the Department, and the unit employees for resolving grievances over the interpretation or application of this Agreement, its amendments, supplements or for unit employees over dissatisfaction with their working conditions." (ECF No. 14-1, 153.)

Nowhere in the First Amended Complaint does Lacey state that he filed a grievance under these procedures. Further, he has not identified a statue by which the Department has waived sovereign immunity for breach of contract claims asserted against it; instead, the Department has pointed to the exclusive avenue by which these claims must be brought. Accordingly, Lacey's breach of contract claims asserted under § 1343 are **DISMISSED**.

    d.  *Punitive Damages*

Finally, the Secretary argues that Lacey's claim for punitive damages must be dismissed, as such damages are not recoverable against a government agency. (ECF No. 14, 10-11.) The Court agrees. It is a matter of settled law that while Congress amended Title VII to allow for punitive damages, "[t]he amendment specifically exempted governments, government agencies and

10

political subdivisions." *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998) (citing 42 U.S.C. § 1981a(b)(1)). Lacey's suit is against the Department of Veterans Affairs, a government agency. Accordingly, his claim for punitive damages must be **DISMISSED**.

2. <u>Motion to Amend</u>

Lacey argues that his Motion to Amend is "necessary so that additional and necessary facts supporting Plaintiff's causes of action can be included in the Complaint." (ECF No. 15-1, 1.) He points out that the motion was brought prior to any Scheduling Order and within twenty-one days after the Defendant filed the relevant Motion to Dismiss. Indeed, Lacey states that the Motion to Dismiss is brought directly in response to the Motion to Dismiss, as "Defendant seemed to suggest, or have concerns as to whether Plaintiff exhausted his remedies prior to this litigation, as well as had concerns as to whether this Court has jurisdiction over Plaintiff's Breach of Contract claim," and the Second Amended Complaint seeks to clarify these issues. *(Id.* at 2.) The Defendants noted they opposed the Motion, but never filed a response in opposition. Lacey's proposed amendments add an additional eleven paragraphs alleging that he exhausted his administrative remedies under the CBA and that the Court has jurisdiction over the breach of contract claims. Lacey also attached a typed statement, purportedly from his union representative, in support of his claims.[5]

The Court notes that Lacey has already amended his complaint once as a matter of course, and thus cannot rely on Rule 15(a)(1) again. *See* (ECF No. 9); *Davis v. City of Memphis Fire Dept.*, No. 11-3076-STA-cgc, 2012 WL 2000713, at *3 (W.D. Tenn. May 31, 2012) ("Plaintiff has already amended his Complaint at least once under Rule 15(a)(1), and he cannot rely on that

---

[5] In this statement, the union representative, Laffeatte Baptist, states that "the VA informed Mr. Lacey that he had exhausted all remedies available as part of his agreement between his union and the VA, and that he was free to pursue litigation." (ECF No. 15-3.) Granting this as true, such a statement would still not confer jurisdiction over the breach of contract claims and other CBA-based claims. *See City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017) (Noting that "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct," and that "only Congress may determine a lower federal court's subject-matter jurisdiction.") (quoting *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004)).

11

portion of Rule 15 again."). Instead, Lacey must demonstrate that justice requires this amendment, when considering the factors of undue delay, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. A proposed amendment is futile if it could not withstand a motion to dismiss. *Gooding v. EquityExperts.org, LLC*, No. 17-12489, 2020 WL 13441663, at *1 (E.D. Mich. Jan. 9, 2020) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Division*, 987 F.2d 376 (6th Cir. 1993)).

While there is no evidence of undue delay, lack of notice, or bad faith, a previously filed amended complaint did fail to cure admitted deficiencies. Ultimately though, the Court finds that Lacey's now-proposed amendments would be futile. Explaining why requires addressing the statutory structure governing labor disputes in federal employment. Since 1978, Title VII of the Civil Service Reform Act ("CSRA") "has been the controlling authority" over labor relations in the federal sector. *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 531 (1989). Title VII of the CSRA was discussed above; it is also known as the Federal Service Labor-Management Relations Statute, or FSLMRS, contained at 5 U.S.C. §§ 7101 *et seq*. "With the FSLMRS, as with all of the CSRA: 'Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining. It follows, then, that federal employees may not circumvent that structure' by seeking judicial review outside the CSRA's procedures." *American Federation of Gov't Employees v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (quoting *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990)). As part of this complex scheme, Congress empowered a separate authority, the Federal Labor Relations Authority ("FLRA"), to "conduct hearings and resolve complaints of unfair labor practices under Section

7118 of this title[.]" 5 U.S.C. § 7105(a)(2)(G). The *American Federation* Court explains the FLRA's role as such:

> The FSLMRS provides several alternative mechanisms to challenge management actions, three of which are pertinent here. First, an aggrieved party may resort to a grievance resolution and arbitration procedure that the FSLMRS requires be included in every collective bargaining agreement. Unless a specific statutory or contract exception applies, that procedure is 'the exclusive administrative procedure [ ] for resolving grievances which fall within its coverage.' After arbitration, either party may file with the FLRA exceptions to an arbitrator's award. The FLRA reviews the award to ensure that it is not 'contrary to any law, rule, or regulation' or otherwise deficient on any ground 'similar to those applied by Federal courts in private sector labor-management relations.' Second, the FSLMRS permits a union to bargain over a challenged management action; and if management asserts that the matter is non-negotiable, the union can pursue a negotiability appeal with the FLRA. Third, to the extent that management enforces a policy that violates a collective bargaining agreement predating the policy, 'any person' can lodge an unfair labor practice charge with the FLRA. The FSLMRS also provides for judicial review of an FLRA order by petitioning for review in this circuit or 'in the circuit in which the person resides or transacts business.' And, although there are two exceptions to judicial review in the appropriate court of appeals, 'this does not mean the district courts are open. It means that review is precluded in any court.' To the extent an FLRA order is judicially reviewable, then, it may be reviewed *only* in the appropriate court of appeals, not in district court. *Id.*

*Id.* at 636-37 (internal citations omitted). Other courts have made clear that the above process encompasses nearly any unfair labor practice complaint against a federal agency. *See, e.g.*, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (CSRA is the exclusive avenue for challenging adverse actions by claiming a statute or action is unconstitutional); *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 171-72 (3d Cir. 2022) (noting that "if the employee's federal suit is, 'at bottom,' challenging an employment action within the Protection Board's jurisdiction, then it must proceed through the review process provided in the CSRA") (quoting *Elgin*, 567 U.S. at 22)); *Munoz v. Locke*, 634 F. App'x 166, 167 (9th Cir. 2015) (noting that "the CSRA preempted common law tort claims" by federal employees challenging specified personnel practices); *Fligiel v. Samson*, 440 F.3d 747, 751-54 (6th Cir. 2006) (collecting cases where the Sixth Circuit has denied judicial review due to the exclusivity of CSRA procedures); *Abbott v. United States*, 144

13

F.3d 1, 4 (1st Cir. 1998) ("A breach of the duty of fair representation is an unfair labor practice. And unfair labor practices are to be adjudicated by the FLRA.") (internal citations omitted)); *Berry v. United States*, 86 Fed. Cl. 750, 756 (2009) ("[F]ederal employment grievance disputes pursuant to a collective bargaining agreement fall within the exclusive purview of the CSRA.").

Lacey's Second Amended Complaint alleges that he exhausted all administrative remedies with the Department. Based on the CBA, that would necessarily involve a complete arbitration that issued an award, or some type of settlement of the grievance before then. No evidence of an arbitration or settlement has been submitted. But even if that is so, this Court would not have jurisdiction over his breach of contract claims regarding the procedures in the CBA. Instead, jurisdiction would lie exclusively with the FLRA to review the below action. And even if Lacey had gone to the FLRA and received a final order regarding these claims, something his Second Amended Complaint does not allege, judicial review would still not lie in this Court, but instead in either the Sixth Circuit or District of Columbia Court of Appeals. *American Federation*, 716 F.3d at 637. Lacey has not plausibly alleged a basis for the Court to exercise jurisdiction over his breach of contract claims in either complaint. Since the proposed Second Amended Complaint deals exclusively with these claims, granting the Motion to Amend would be futile. Accordingly, the Motion to Amend is **DENIED**.

### IV.    CONCLUSION

In sum, the Secretary's first Motion to Dismiss is **DENIED** as moot. Lacey's claims under 42 U.S.C. § 1983, his breach of contract claims, and his claim for punitive damages are hereby **DISMISSED**. Lacey's Motion to Amend is **DENIED** for futility. Lacey's Title VII race discrimination claims survive this motion and may proceed.

**IT IS SO ORDERED** this 5th day of May, 2023.

*s/ John T. Fowlkes, Jr.*
JUDGE JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE