IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KENNETH LACEY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) No. 2:21-cv-02801-JTF-cgc |
| DENIS R. MCDONOUGH, | ) |
| SECRETARY OF VETERANS AFFAIRS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Secretary of the Department of Veterans Affairs's ("the Secretary") Motion for Summary Judgment, filed on August 3, 2023. (ECF No. 35.) Plaintiff Kenneth Lacey filed his Response on September 6, 2023, and the Secretary filed his Reply on September 27, 2023. (ECF Nos. 38 & 46.) For the reasons set forth below, the Secretary's Motion for Summary Judgment is **GRANTED**.

### I. FACTUAL BACKGROUND

Plaintiff is a Housekeeping Aid, WG-2, employed with the Veterans Affairs Medical Center, Memphis, Tennessee. (ECF No. 9-3, 1.) As an employee, Lacey was a member of the National Association of Government Employees ("the Union"), a federal-sector labor union organized under the Federal Service Labor-Management Relations Statute ("FSLMRS"). (ECF No. 28, 2.) On August 7, 2018, the Department "posted a position for a Safety and Occupational Health Specialist on USAJOBS[.]" (ECF No. 9, 3.) This position was referred to as Vacancy

Announcement RZ-18-LP-10279638-T5, and Lacey internally refers to the position as "Announcement A." (*Id.*) On September 7, 2018, the Department posted a substantially similar, separate job opening, referred to as Vacancy Announcement RZ-18-AFA-1034287-T5-BU, which Lacey refers to as "Announcement B." (*Id.*) Current or former federal employees, individuals with disabilities, veterans, and internal Veterans Affairs ("VA") employees were eligible to apply for Vacancy Announcement A, while only internal VA employees were eligible to apply for Vacancy Announcement B. (ECF No. 38-1, 4.) Both job announcements stated that the respective positions were responsible for "overall management and technical responsibility for the comprehensive occupational safety and health, fire protection, emergency management, Industrial Hygiene and Green Environment Management System (GEMS) at Memphis VAMC." (ECF Nos. 35-3, 2-3 & 35-4, 2.) The announcements also indicated that the positions required expert knowledge of numerous health and safety protocols, including those of the Commission on Accreditation of Rehabilitation Facilities ("CARF") Occupational Safety and Health Administration ("OSHA'), Environmental Protection Agency ("EPA"). (*Id.*) Further, the announcements made clear that "[e]rrors or omissions may affect [the applicant's] rating or consideration for employment." (ECF Nos. 35-3, 9 & 35-4, 7-8.)

Lacey applied for Announcement A on August 13, 2018, and for Announcement B on September 8, 2018. (ECF No. 9, 4.) He was ultimately not selected for either position. (ECF No. 38-1, 1.) Michael Penrod and David Maddock were selected for the jobs described in Announcement A and Announcement B respectively. (ECF No. 46-1, 1.) Neither was an internal VA employee. (*Id.* at 2.)  The parties dispute whether Penrod and Maddock were hired under Vacancy Announcements A and B, or whether both were hired from Vacancy Announcement A

2

due to an authorized double incumber.[1] (ECF No. 38-1, 1-2.) Sandra Dickey was the selecting official for both positions. (*Id.* at 2-3.) Although the parties dispute the extent of Paul Wells' involvement in the final hiring decision, it is undisputed that he was responsible for ranking the applicants who met the minimum requirements for the positions. (*Id.*) Penrod, Maddock, Dickey, and Wells are Caucasian, while Lacey is African American. (*Id.* at 1-2.)

The parties dispute whether Lacey was at least as qualified for the two positions as Penrod and Maddock. (*Id.* at 1.) Similarly, they dispute whether Lacey, Penrod and Maddock's resumes demonstrate safety professional experience in a variety of required OSHA programs. (*Id.*) However, the parties agree that Lacey's resume reflects his experience as a firefighter. (*Id.* at 3.) After review, Lacey received a resume score of 15, while Penrod and Maddock both received scores of 20. (ECF No. 9, 2 & 5.) The parties dispute whether Lacey's resume was objectively and correctly scored; Lacey asserts that he should have received an overall score of 25. (ECF Nos. 46-1, 3 & 9, 2.) Last, they dispute whether Dickey had selected Penrod and Maddock for the positions before Lacey's resume was actually scored. (ECF No. 46-1, 2.)

## II. PROCEDURAL HISTORY

Lacey brought this action on December 22, 2021, alleging claims of race discrimination and breach of contract occurring throughout the hiring process. (ECF No. 1) The Secretary filed his initial Motion to Dismiss on March 3, 2022, (ECF No. 10), but Lacey filed an Amended Complaint as of right that very day, (ECF No. 9.) The Secretary then filed a Motion to Dismiss the Amended Complaint on March 29, 2022, (ECF No. 14), and Lacey filed a Second Motion to Amend/Correct Complaint, seeking to file the Second Amended Complaint, two days later March

---

[1] "A double incumbency (temporary) is caused by the appointment of an employee to a position that is already occupied by an incumbent. Double incumbencies are primarily used for succession planning initiatives when the incumbent of a position is planning to retire, or otherwise separate from his position." (ECF No. 35-1, 8.)

3

31, 2022, (ECF No. 15). On May 5, 2023, the Court granted the Secretary's Motion to Dismiss and denied Lacey's Motion to Amend, leaving just the Title VII discrimination claim. (ECF No. 28.) The Secretary filed his Motion for Summary Judgment on August 3, 2023, arguing that he is entitled to judgment as a matter of law on Lacey's Title VII claim. (ECF No. 35.) Lacey filed his Response on September 6, 2023, and the Secretary filed his Reply on September 27, 2023. (ECF Nos. 38 & 46.) The Court addressed a collateral issue that Lacey raised in his Response pertaining to issues with one of the Secretary's supporting affidavits in a separate order entered on October 20, 2023. (ECF No. 51.)

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been filed, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or argue that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). "When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). A genuine issue of fact for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party; thus, a plaintiff must produce

4

probative evidence to create a material factual doubt. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 and 250 (1986). See also *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) ("The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.") (internal quotation marks omitted). The opposing party "cannot rest solely on the allegations made in [his] pleadings." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002)).

The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

## IV.    ANALYSIS

### A. The Secretary's Legitimate Non-Discriminatory Reason

The Secretary contends that he has provided a legitimate non-discriminatory reason for the Agency's decision to not select Lacey for either of the positions, meaning that Lacey now bears the burden of proving that this reason is a pre-text and the real reason for his non-selection was discrimination in violation of Title VII. (ECF No. 35-1, 5.)

Title VII discrimination claims are analyzed under the burden-shifting framework outlined in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973). Under that framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination or retaliation. *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (citing *McDonell Douglas Corp.*, 411 U.S. at 802). If the plaintiff can make out a *prima facie* case, the burden then shifts to

5

defendants, who must articulate some legitimate, non-discriminatory reason for [their] actions." *Laster v. City of Kalamazoo*, 746 F.3d at 730 (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). Even if defendants succeed in articulating such a reason, a plaintiff can still prevail by "demonstrat[ing] that [d]efendants' proffered reason was not the true reason for the employment decision," but was merely a pretext for discrimination. *Id.* That being said, the *McDonell* framework was "never intended to be rigid, mechanized, or ritualistic." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

It appears the Secretary concedes that Plaintiff has made out an initial *prima facie* case of discrimination. This is because he has provided what he believes to be a legitimate non-discriminatory reason for Lacey's non-selection, that is, the existence of more qualified candidates. The Secretary outlined the full process by which Lacey's application was reviewed, and asserts that Lacey's application was fully considered, that he met the minimum requirements for the job and was placed on the certified list for Vacancy Announcement A. (ECF No. 35-1, 6.) Because Lacey was on the list, it stands to reason that his resume had been received, scored, and reviewed by Wells and ultimately Dickey. (*Id.*) After reviewing the resumes of all certified applicants, including Lacey, Wells and Dickey found that Penrod and Maddock had more relevant safety experience; their resumes reflected that they had significant full-time experience as safety professionals. (*Id.*) This finding led to both applicants' resumes scoring higher than Lacey. (*Id.*) More specifically, the reviewers found that although Lacey had significant experience in fire safety, Penrod and Maddock had experience in a variety of OSHA programs, including "Construction Safety, LOTO, Fall Protection, Lead Based Paint and Asbestos hazards, hazardous materials safety, confined spaced, evacuation/trench safety" among other areas. (*Id.*)

6

Wells and Dickey indicated that Plaintiff's resume emphasized his responsibilities and safety experience as a firefighter but failed to document necessary experience with other important programs. (ECF No. 35-7, 23.) They also observed that Plaintiff's resume lacked attention to detail and contained formatting errors. (ECF Nos. 35-7, 24 & 47-2, 2.) Thus, the Secretary argues that the foregoing review process clearly demonstrates that the VA had legitimate non-discriminatory reasons for not selecting Lacey; Lacey was not the best candidate in terms of both relevant experience and application presentation.

Second, the Secretary contends that Maddock's failure to satisfy the internal employee requirements of Vacancy Announcement B is irrelevant because of the approved temporary double incumber, which resulted in both positions being filled from the Vacancy Announcement A cert list. (ECF No. 35-1, 8.)[2] The Secretary maintains that this is significant because Maddock satisfied the requirements of, and applied for, Vacancy Announcement A. (*Id.* at 9.)

In addition, the Secretary argues that Lacey has not presented evidence of racial animus in the review and assessment of his resume. (*Id.*) He also asserts that even if Lacey's resume should have been scored higher, he cannot prevail on his Title VII claim because he has not shown any evidence of racial bias tainting the resume scoring process. (*Id.*) The Court agrees. The only evidence of racial bias is Lacey's belief that "Sandra Dickey has a history of not getting along with people of color." (*Id.*) His basis for this conclusion was that another employee, Glenn Heard, told him that he should not work in the Safety Department because "there's three people over there of color, and [Dickey is] clashing with all three of them." (*Id.*) Dickey has denied this, and Lacey has not put forward any additional evidence in rebuttal. (*Id.*) Notwithstanding all of this, it is

---

[2] As noted above, the Secretary contends that Dickey sought and received authorization for this double incumber because Wells, a Safety and Occupational Health Specialist, was resigning, and she wanted to backfill his position by selecting someone from the Vacancy Announcement A cert list. (*Id.*)

7

undisputed that Wells was responsible for ranking the candidates and Lacey stated in his deposition that Wells held no racial animosity against him. (*Id.* at 9.)

Lacey does not directly respond to the Secretary's stated non-discriminatory reason for not hiring him. Instead, he submits that somehow, he should have received 20 points for his 20 years of service as firefighter, and then speculates that because he only received 15 points for his experience, the Secretary must have illegitimately deviated from its policies and procedures to prevent him from getting the position. (ECF No. 38, 3.) To the extent that Lacey asserts claims of racial animus and discrimination with respect to the scoring of his resume, his assertions are meritless. The record indicates that Lacey advances only his personal beliefs about the process generally and Dickey's involvement specifically. As noted above, in responding to a motion for summary judgment, the non-moving party is obligated to provide concrete evidence supporting its claim; they cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact. *Street*, 886 F.2d at 1479. Lacey has failed to provide concrete, probative evidence of racial animus.

Lacey next argues that certain procedural deficiencies relative to Vacancy Announcement A support his discrimination claim. Lacey contends that the Department of Veterans Affairs violated its own rules by hiring both Penrod and Maddock under Vacancy Announcement A. (*Id.*) He argues that nobody should have been hired under Vacancy Announcement A because it was not held open for 15 days as required. (*Id.* at 4, 9.) He also argues that neither Penrod nor Maddock should have been hired as they did not meet the internal hire requirements. (*Id.* at 4.) However, Lacey does not cite to any rule or other authority to support his contention, and he has failed to address the Secretary's assertion that the internal hire requirements were irrelevant because both positions were filled using the Vacancy Announcement A list.

8

The Court finds that the Secretary has met his burden of offering a legitimate non-discriminatory reason for hiring Penrod and Maddock. The Court further finds that Lacey has failed to produce probative evidence of discrimination, which is necessary to create a material factual dispute. Thus, he has failed to demonstrate that the Secretary's hiring decision was a pretext for discrimination. *See Anderson*, 447 U.S. at 250. First, the Secretary has produced significant evidence to show that both Penrod and Maddock were highly qualified for the position of Safety and Occupational Health Specialist. The Secretary has also produced evidence tending to support his contention that Lacey's years of experience as a firefighter alone do not qualify him to manage OSHA programs. (ECF Nos. 35-8, 2-4 & 47-2, 2.) In contrast, Lacey does not provide any support for his claim that his years of work as firefighter were equivalent to years as a safety professional beyond stating his belief that "[firefighting] is the epitome of a safety field." (ECF No. 38, 3.) The Court notes that the requirements outlined in Vacancy Announcement A and B support the Secretary's hiring decision because both job descriptions reflect that the position requires knowledge of a wide variety of safety regulations and protocols, including CARF, OSHA, and EPA. (ECF Nos. 35-3, 2-3 & 35-4, 2.) Lacey's experience, and resume, do not demonstrate such knowledge or experience.

Second, the announcements made clear that errors or omissions in an applicant's materials could affect his or her rating or consideration for employment. (ECF Nos. 35-3, 9 & 35-4, 7-8.) Upon review of Lacey's resume, the Court finds support for the Secretary's claim that Lacey lacked experience as a full-time safety professional, as outlined in Vacancy Announcements A and B; it primarily showcases his experience as a firefighter. Also, the resume does contain some formatting errors. (*See* ECF No. 35-12) Lacey argues that his resume demonstrates that he has other types of experience with OSHA programs beyond firefighting. (ECF No. 38-1, 3.) However,

he does not state what that experience is in any of his filings, and the Court cannot discern any such experience from the resume.

Third, Lacey has not made explicit why the internal hiring requirements or the deficiencies with the Vacancy Announcement posting duration create a genuine dispute of material fact relative to the legitimacy of the Secretary's non-discriminatory reason for not hiring him. This is especially true considering Lacey's failure to produce any probative evidence of racial animus. Importantly, Lacey did not directly address the double incumber issue. Because of this, the Court assumes, as the Secretary claims, that both Penrod and Maddock were hired under Vacancy Announcement A. Neither party disputes that current or former federal employees, individuals with disabilities, veterans, and internal VA employees were eligible to apply for positions covered by Vacancy Announcement A. (ECF No. 38-1, 4.) Both Penrod and Maddock are veterans, so they were eligible to apply for Vacancy Announcement A despite not being internal to the agency. (*See* ECF No. 35-1, 9.) Further, the Court cannot consider Lacey's contention that the double incumber violated a rule about listing how many people could be hired for the position, because he did not identify any such rule. (*See* ECF No. 38, 4.) Finally, Lacey has not provided anything to show the existence of a genuine dispute of material fact based on the improper application timing because, as the Secretary points out, he was still able to apply for the position and did in fact apply. (*See* ECF No. 46, 5.)

Hence, the Secretary has met his burden in setting forth a legitimate non-discriminatory reason for not hiring Lacey.

### B. Pretext

In the final stage of the *McDonnell* analysis, the plaintiff has the burden of proving that the defendant's non-discriminatory reason for non-selection is a pretext for intentional and unlawful discrimination. *Harris v. City of Akron, Ohio*, 836 F. App'x. 415, 419 (6th Cir. 2020). "The *prima*

10

*facie* case and showing of pretext alone could present a genuine issue of material fact for the jury because [p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)) (internal quotation marks omitted). "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) (citations omitted). Pretext may also be shown by demonstrating that an employer's decision was so unreasonable as to cast doubt on its actual motivation. *Id.*

Lacey gives three reasons why he believes the Secretary's reasons for not hiring him are pretext for intentional discrimination: (1) he was highly qualified for the position; (2) Maddock, the selectee for Vacancy Announcement B, should not have been selected because he was not an internal employee, so the procedural deviation involving a double incumber must have been done to discriminate; and (3) his belief that Dickey "has a problem with people of color." (ECF No. 38, 3-9.)  The Court considers each ground in turn.

Relative qualifications may establish material factual issues as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate; or (2) plaintiff was at least as qualified, if not better qualified as the successful applicant, and the record contains "other probative evidence of discrimination." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-8 (6th Cir.2006), cert. denied, 550 U.S. 904 (2007). As discussed above, Lacey has failed to provide any supporting evidence tending to establish that his experience as a firefighter is equivalent to the successful candidates experience as full-time safety professionals. Both Penrod and Maddock have

11

significant experience with relevant safety areas for the positions outlined in Vacancy Announcement A. (ECF No. 35-1, 6.)

Lacey has not met his burden of proving that he was the "plainly superior" candidate as compared to the other candidates. He has also failed to prove that he was "at least as qualified" when compared to the other candidates and failed to provide evidence of discrimination beyond hearsay. *See Bender*, 455 F.3d at 627-8. Hence, Lacey has not created a triable issue of fact relative to his qualifications for the job.

The Court also previously addressed the alleged procedural irregularities pertaining to Maddock's eligibility to apply for the job. Because the Court found that Lacey had not properly disputed the existence of a double incumber, and Maddock met the broader eligibility requirements for Vacancy Announcement A, it did not find that this casted doubt the legitimacy of the Secretary's non-discriminatory reason. That analysis compels the same result here. Lacey has not provided any contrary evidence supporting his apparent claim that the double incumber did not exist, and that Maddock did not meet the Vacancy Announcement A eligibility requirements. Hence, Lacey has not met his burden of proving that the double incumber demonstrates pretext generally, and by extension, has failed to prove that it demonstrates pretext for intentional discrimination.

Finally, and as noted above, Lacey has not created a genuine issue of material fact as to the existence of racial discrimination. Contrary to his racial animus claims, in his deposition, he stated that he did not witness anything that was racially derogatory; he relies exclusively on his hearsay testimony that "Sandra Dickey has a history of not getting along with people of color," and his claim that another employee told him something similar in support of his contention that racial

12

animus or discrimination took place. (ECF No. 35-1, 9.)  This does not suffice at the summary judgment stage.

## V.   CONCLUSION

The Court finds that the Secretary is entitled to judgement as a matter of law as to the Title VII issue.  There are no genuine issues of material fact.  The Secretary has set forth a legitimate non-discriminatory reason for his department's decision to not hire Lacey, and Lacey is unable to establish that the proffered reason was a pretext for intentional discrimination. Accordingly, the Secretary's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED** this 22nd day of January 2024.

*s/ John T. Fowlkes, Jr.*
JUDGE JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE